UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CASE NO. 1:11-CV-157-R

**JOHN MADISON**                                                                                         **PLAINTIFF**

v.

**NATIONWIDE MUTUAL
INSURANCE COMPANY**                                                                      **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Plaintiff's Motion to Compel Discovery (DN 23), to which the Defendant has responded in opposition (DN 24), and the Plaintiff has replied (DN 26). This case has been referred to the undersigned Magistrate Judge for ruling on all discovery motions pursuant to 28 U.S.C. § 636(b)(1)(A) and is now ripe for determination.

The Plaintiff seeks discovery of his complete insurance claims file (DN 23). For the following reasons, the motion is GRANTED in part and DENIED in part. The Defendant shall PRODUCE the entire file subject to objections that are articulated with sufficient specificity that the Plaintiff and the Court can assess their validity.

**Background Facts and Procedural History**

On or about August 25, 2009, the Plaintiff was involved in an automobile accident with Berri Humphrey. As the time of the accident, the Plaintiff had an uninsured motorist policy with Defendant Nationwide. On August 27, 2009, two days after the accident, the Plaintiff filed a claim for uninsured motorist benefits. On February 19, 2010, Nationwide made a settlement offer to the Plaintiff after investigating his claim. The Plaintiff rejected the offer and filed suit in state court against Humphrey for causing the accident and against Nationwide for uninsured motorist benefits.

The Plaintiff filed a state court case (the "first case") in Barren County Circuit Court on

March 4, 2010. The first case went to jury trial, and the state court entered judgment in favor of the Plaintiff on June 1, 2011.

Subsequent to judgment in the first case, the Plaintiff filed the present suit (the "second case") in Edmonson County Circuit Court against Nationwide and Adjuster Charlie Stevens. The Plaintiff claims that these Defendants acted in bad faith and in violation of Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"). The Defendant removed the second case to this Court based on diversity jurisdiction, and the Court dismissed Stevens as a party.

On July 16, 2012, the Court dismissed the Plaintiff's bad faith claims arising prior to the filing of the first case on March 4, 2010, on the grounds of claim preclusion and allowed the remaining claims to proceed (DN 18). Therefore, the only claims remaining pertain to the Defendant's "post-filing conduct."

The Plaintiff seeks a complete copy of his insurance claims file. The Defendant objects to producing the pre-litigation file, the post-litigation file documents logged as protected by attorney-client and work product privilege and documentation regarding reserves.

## Privilege

The Plaintiff seeks a complete copy of his insurance claims file, including those portions that the Defendant has logged as undiscoverable due to attorney-client and work product privilege (DN 23-1, p. 2). A copy of the Defendant's Privilege Log is at DN 23-4.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1).

The parties devote a great deal of analysis to the issue of whether this Court should recognize and apply the asserted privileges in the present context of a "first party" bad faith action in which

the insurer is suing his own insurer. This Court recently found that the attorney-client privilege and work product doctrine are generally inapplicable in first party bad faith cases. *Minter v. Liberty Mut. Fire Ins. Co.*, 2012 WL 2430471 (W.D.Ky.).[1]

In *Shaheen v. Progressive Cas. Ins. Co.*, 2012 WL 3644817 at *3 (W.D.Ky.), Senior District Judge Thomas B. Russell cited the *Minter* approach approvingly. Based on the reasoning of *Minter*, the blanket privileges asserted by Nationwide are inapplicable in this first-party bad faith action.

### Pre-Litigation Evidence

Taking the Defendant's blanket privilege objection out of the equation, we turn to the question of the scope of discoverable evidence. "For discovery requests in first-party cases, because the insurance file is created on behalf of the insured, the entire file is typically discoverable by the plaintiff." *Minter* at *2 citing *Shaheen v. Progressive Cas. Ins. Co.*, 2012 WL 692668 at *3 (W.D.Ky.). See also 2012 WL 3644817 at *3 ("In first-party litigation, the entire insurance file is generally discoverable"). This Court's broad approach to discovery goes back at least as far as *Graham v. Gallant Ins. Group*, 60 F.Supp.2d 632, 635 (W.D.Ky. 1999) (evidence of post-filing conduct "is discoverable even though it may ultimately be found to be inadmissible").

The discovery of pre-filing conduct appears reasonably calculated to lead to the discovery of admissible evidence.Notwithstanding the fact that this Court has dismissed the Plaintiff's pre-filing conduct claims, and although certain pre-filing conduct evidence may ultimately be found to be inadmissible, the Plaintiff is entitled to discovery of his entire insurance claims file.

---

[1]Defense counsel represented Liberty Mutual in the *Minter* case

3

### Relevance of Post-Filing Conduct

In *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006), the Supreme Court of Kentucky held that certain "post-filing conduct" may support claims of bad faith. The Defendant contends that the information sought by the Plaintiff is irrelevant to his bad faith claims within the framework of *Knotts*.

As noted by Judge Russell in *Budde v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 3483951 (W.D.Ky.), application of *Knotts* is not as simple as it appears on its face. In approximate terms, *Knotts* held that evidence of low settlement offers is admissible but not evidence of litigation conduct, techniques, and strategies. However, *Knotts* preferred to ground the determination in the Rules of Civil Procedure.

Judge Russell addressed the application of *Knotts* in three unpublished opinions arising from the same case. The *Budde* trilogy demonstrates the complexity of applying *Knotts*: 2009 WL 3483951, 2010 WL 3516575, 2011 WL 1695838.

In *Budde* I, this Court recounted that Ms. Budde was injured in a motorcycle accident in which the motorcycle driver was underinsured. Ms. Budde filed a claim against her own policy for underinsured motorist benefits. State Farm denied the claim, arguing that a policy exclusion applied. Ms. Budde prevailed on summary judgment motion pertaining to coverage in the state court and on appeal.

Thereafter, Ms. Budde filed a bad faith action, which was removed to this Court. The parties agreed to delay discovery until the Court could determine whether State Farm's post-filing conduct was "litigation conduct" or "settlement behavior" as defined by *Knotts*.

State Farm argued that there was no issue of settlement because the determination was

coverage, not the amount that would be paid out in the event of coverage, and that Ms. Budde successfully availed herself of the rules of civil procedure (summary judgment) in state court and that process provided her an adequately remedy.

This Court disagreed with State Farm, holding that the proper application of *Knotts* was "not this simple." *Budde* I at *5. "The relevant inquiry is whether State Farm had a reasonable basis for denying the claim and making no offer of settlement" after the issue of coverage had become reasonably clear. *Budde* I at *7. The Court indicated that this issue "probably should be determined by the Court." *Budde* I at *8.

In *Budde* II, focusing primary on the terms of the policy, the Court determined that the coverage issue was not reasonably clear at any point during the litigation and appellate process in state court and granted summary judgment in favor of State Farm.

In *Budde* III, the Court reconsidered summary judgment based on evidence submitted in connection with the Plaintiff's motion to alter judgment pertaining to communications between State Farm and its counsel during the state court litigation. The Court held that "[w]hile the weight of the evidence may favor a finding of no bad faith, upon reconsideration, the Court finds that reasonable minds may differ in the inferences to be drawn from the evidence and the question of good faith of the insurer is for the jury." *Budde* III at *5.

### The Defendant's Privilege Log

The Defendant's Privilege Log fails to provide an adequate basis for the Plaintiff or this Court to assess whether – within the framework of *Knotts* and *Budde* – the information sought is relevant for discovery purposes, i.e, whether it is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

At a minimum, the privilege log or other objection should reveal:

(a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions.

(b) The document's date.

(c) The purpose and subject matter of the document.

(d) The nature of the privileged asserted, and why the particular document is believed to be privileged [notwithstanding *Minter*, supra].

*Mafcote, Inc. v. Federal Ins. Co.*, 2010 WL 1929900 at *6 (W.D.Ky.).

The privilege log in this case contains only the date of the document and the privilege asserted with no further explanation (DN 23-4).

Therefore, the Defendant should produce the entire insurance claims file subject to objections that are articulated with sufficient specificity that the Plaintiff and the Court can assess their validity, within the framework of *Knotts* and *Budde*, supra.

## Insurance Reserves

As with the privilege question, the parties analyze foreign state and foreign circuit authorities on the issue of whether evidence of insurance reserves is discoverable, and it appears that federal courts are split on this issue.

The Supreme Court of Kentucky held that such evidence is discoverable in *Grange Mut. Ins. Co. v. Trude*, 151 S.W. 3d 803, 813 (Ky. 2004):

The relevance of procedures for setting reserves to a bad faith claim seems obvious. Reserve setting procedures are controlled in part by statute. Evidence of Grange's reserve setting procedures would help show whether Grange is following the statutory and regulatory requirements and whether the specific system for setting reserves is aimed at achieving unfairly low values. We find that this evidence is relevant to the bad faith claim.

Like many issues in this discovery dispute, the questions of discoverability and admissibility are separate and distinct. It is entirely possible that this Court will eventually determine that the evidence of insurance reserves is inadmissible. In *Meador v. Indiana Ins. Co.*, 2007 WL 1098208 (W.D.Ky.), this Court determined that evidence of reserves was not admissible because the facts were clear that the reserves were changed because of new evidence regarding damages, not liability. Under the reasoning of *Trude* and *Meador*, the evidence is discoverable. Whether it is ultimately admissible is a question to be determined after the facts are established.

## Order

For the foregoing reasons, the Plaintiff's Motion to Compel Discovery (DN 23) is GRANTED in part and DENIED in part. Within 30 days of entry of this Order, the Defendant shall PRODUCE the entire insurance claims file, including evidence of insurance reserves, subject to objections that are articulated with sufficient specificity that the Plaintiff and the Court can assess their validity. The Defendant's objections, if any, shall be within the framework of *Minter*, *Knotts*, and *Budde*, supra.

c: Counsel